IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 21-cv-02068

UHS OF DENVER, INC. d/b/a Highlands Behavioral Health System, a Delaware corporation, and,
UNIVERSAL HEALTH SERVICES, INC., a Delaware corporation

    Petitioners,

v.

ADAM SKIBELL,

    Respondent.

## ORDER

This arbitration case is before the Court on Petitioners' Petition to Vacate Arbitration Award (ECF No. 1) and Respondent's Motion to Confirm Arbitration Award (ECF No. 8). The Petition and Motion have been briefed (ECF Nos. 1-14, 10, 11, 12) and are ripe for review. For the reasons below, the Court denies the Petition and grants the Motion.

**I.    BACKGROUND**

Respondent worked for Petitioners as an intake counselor at a behavioral health facility from August 2017 until his termination in January 2018. During an initial orientation and training period, he informed his supervisor about his dyslexia and requested accommodation in the form of extra time to learn the procedures of the job and to complete evaluations. But when he met with his supervisor and the human resources manager to engage in the interactive process required by the Americans with Disabilities Act ("ADA"), they told him he was taking too long to perform his job and placed him on a performance improvement plan that imposed time limits

for specific tasks.

In the months that followed, Respondent's supervisor and others were often condescending and demeaning towards him.  Respondent felt that his work environment had become toxic and emotionally abusive and testified that his supervisor "would scream at him, stand over him while he was trying to work, demand answer to questions on files he had not yet seen, rolling her eyes and constantly treating him with anger and impatience." (ECF No. 8-3 at 11.)  One coworker twice reported that Respondent was being harassed by his supervisor and other supervisory staff, but Petitioners did not investigate or do anything to correct the situation. (*Id.*)  Others testified that Respondent walked into and out of the building with his head down and that he appeared "defeated" and close to tears.  (*Id.* at 27.)  One or more coworkers testified that Respondent's supervisor did not treat others in the same way and described the circumstances as "heartbreaking."  (*Id.* at 8, 25.)

After his termination, Respondent initiated an arbitration proceeding pursuant to the parties' arbitration agreement.  He brought four ADA claims for (1) disparate treatment, (2) failure to accommodate, (3) hostile work environment, and (4) retaliation.  He prevailed on each claim.  His economic damages of $4,182 were undisputed, as Plaintiff found other employment making more money soon after his termination.  The arbitrator awarded compensatory damages of $150,000 for his emotional distress, noting that such damages are capped under the ADA at $300,000 and that his injuries had, for the most part, dissipated by then.  The arbitrator awarded punitive damages of $75,000, noting that Respondent's supervisors included experienced human resources personnel who were well aware of Respondent's rights under the ADA and acted with malice or reckless indifference to those rights.  The arbitrator also awarded attorney fees and costs of about $500,000 as well as prejudgment interest and

arbitration fees, for a total award of $730,660.35.

Petitioners seek an order vacating the award, arguing that the arbitrator attested that she was not a member of any organization that might be relevant to the dispute while failing to disclose her close association with the STAR Institute, an organization formed by the arbitrator's sister that provides support and treatment for individuals with sensory processing disorders. According to its website, the STAR Institute's mission is to impact quality of life by developing and promoting best practices for sensory health and wellness through treatment, education, and research. After the arbitration, Petitioners became aware that since 1980, the arbitrator had served on the Board of the organization and its predecessor, including as Board President. Petitioners also discovered that in 2014, the arbitrator was awarded the organization's first Founder's Award, in recognition of her service as an inspirational leader and tireless Board member. Petitioners assert they never would have accepted the arbitrator had they known about her affiliation with the STAR Institute.

## II.   LEGAL STANDARD

Under the Federal Arbitration Act, a district court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). But "[o]nce an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146-47 (10th Cir. 1982). "[O]nly clear evidence of impropriety . . . justifies the denial of summary confirmation of an arbitration award. For an award to be set aside, the evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Id.* at 1147 (citation omitted).

**III.    DISCUSSION**

Petitioners contend that the arbitrator's "long advocacy on behalf [of] individuals with sensory processing disorders is the type of relationship that was required to be disclosed" because Respondent alleges "similar processing challenges due to his dyslexia." (ECF No. 1-14 at 10-11.)  But the Court does not find there is clear evidence of impropriety by the arbitrator. Assuming Respondent's dyslexia is appropriately characterized as a sensory processing disorder, there is no suggestion that he had anything to do with STAR Institute, and it is not disputed that he did not know the arbitrator personally.  Moreover, there is no evidence that in performing her role on the Board, the arbitrator worked closely with individuals with disorders similar to Respondent's dyslexia such that she would not have been able to impartially consider Respondent's circumstances and assess the merits of his claims.  Petitioners' remote, uncertain, and speculative evidence of bias is insufficient to overcome the presumption of finality with respect to arbitration awards.

Petitioners' discussion of *Mason v. Mason Pro. Firefighters, IAFF Local 4049*, 63 N.E.3d 179 (Ohio Ct. App. 2016), does not advance their position.  There, the arbitrator failed to disclose that he served, in a paid role, as the executive director of an organization that supported "a number of positions that would be unacceptable to a party representing the management side of an arbitration decision." *Id.* at 183.  Here, the arbitrator was an unpaid (though longstanding) Board member, and Petitioners have identified no positions supported by the STAR Institute that they deem "unacceptable" or that could reasonably be deemed so by anyone else.  Thus, the facts and circumstances in this case do not "depart from normal procedures of arbitration significantly enough to find evident partiality," as was found to be the case in *Mason*. *Id.*

Finally, Petitioners cite snippets from the arbitration award as well as the size of the award as evidence the arbitrator "identified emotionally with [Respondent's] journey" and that the award "reflect[ed] the reasoning of a passionate advocate rather than a neutral decision-maker." (ECF No. 14-1 at 15.) But the arbitrator's thirty-page award contains ample findings of fact and conclusions of law to support the amounts awarded. In stating that "[t]he imposition of blame where no fault existed, is indeed heartbreaking," the arbitrator merely echoed testimony of one or more of Respondent's coworkers. (ECF No. 8-3 at 8, 25, 26.) And the arbitrator's conclusion that Respondent was "treated so harshly . . . because of his dyslexia" followed a summary of some of the testimony supporting his emotional distress damages. (*Id.* at 26.) The arbitrator found the impacts of Petitioners' conduct on Respondent included feelings of embarrassment and anger, a return of his depression, scary nightmares, and trouble sleeping, and these findings are supported by the testimony of Respondent, his wife, his mother, and his coworkers. The Court finds the arbitrator's statements and conclusions are supported the evidence presented at the arbitration and that Petitioners have failed to demonstrate any direct or definite evidence of bias.

## IV. CONCLUSION

Accordingly, the Court DENIES Petitioners' Petition (ECF No. 1) and GRANTS Respondent's Motion. The Clerk is directed to CLOSE this case.

DATED this 27th day of January, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

5